## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CROSS COUNTRY MOTOR CLUB, INC. | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Civil Action No.: |
| AUTO SERVICES COMPANY, INC. | ) ) ) |
| Defendant. | ) ) ) |

04 - 11992 NG

MAGISTRATE JUDGE _Dein_

### NOTICE OF REMOVAL

TO:   Victor H. Polk, Jr., Esq.
      Bingham McCutchen LLP
      Attorneys for Plaintiff
      150 Federal Street
      Boston, MA 02110

      Clerk of the Court
      Middlesex Superior Court
      Commonwealth of Massachusetts

RECEIPT # 58694
AMOUNT $ 150 -
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK._____
DATE ___9-15-04___

Defendant Auto Services Company, Inc., by its attorneys, Davis, Malm & D'Agostine, P.C. files this Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446, and state the following in support.

1.    The removed action is Docket No. 04-3147 in Middlesex Superior Court, Commonwealth of Massachusetts, captioned *Cross Country Motor Club, Inc. v. Auto Services Company, Inc.* A copy of the summons and complaint dated August 10, 2004 (the "Complaint") is annexed hereto as Exhibit A. Counsel is informed that the Complaint was served upon the defendant Auto Services Company, Inc. on or about August 16, 2004. No answer has been filed to date.

2.      In this matter, plaintiff Cross-Country Motor Club, Inc. alleges that defendant ASC breached its contract with Cross County. In connection with these allegations, Plaintiff maintains that it is entitled to compensatory damages of no less than $113,000.

3.      Plaintiff is a corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business in Medford, Massachusetts.

4.      Defendant Auto Services Company, Inc. is a corporation organized under the laws of Arkansas, with its principal place of business in the city of Mountain Home, Arkansas.

5.      Because there is complete diversity and the amount in controversy exceeds $75,000, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, and the action may be removed pursuant 28 U.S.C. § 1441(b) as this Notice is being filed within 30 days from receipt of the plaintiff's complaint.

6.      Written notice of the filing of this notice of removal is being filed with the Superior Court, Commonwealth of Massachusetts and provided to other parties as required by law.

7.      A copy of the summons and complaint which constitute the only pleadings and process as of this date are attached.

        **WHEREFORE**, defendant Auto Services Company, Inc. request:

1.      That this action be removed from the Superior Court, Middlesex, Commonwealth of Massachusetts; and

2.    Such other and further relief as this Court may deem just and proper.

Dated: Boston, MA.
        September 14, 2004

By: _____
David Rapaport BBO#411920
Davis, Malm & D'Agostine, P.C.
One Boston Place
Boston, MA 02108
617 367-2500
Attorneys for Defendant
Auto Services Company, Inc.

::ODMA\GRPWISE\OB.230Park.OB_Library:185794.1



## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
DEPARTMENT OF
THE TRIAL COURT

|  |  |
|---|---|
| CROSS COUNTRY MOTOR CLUB, INC. | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AUTO SERVICES COMPANY, INC. | ) |
| Defendant. | ) |

04-3147

CIVIL ACTION
NO.

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
ESSEX

AUG 10 2004

Edward J. Sullivan

CLERK

### COMPLAINT

1.      Plaintiff, Cross Country Motor Club, Inc. ("Cross Country"), brings this action against Defendant, Auto Services Company, Inc. ("ASC"), seeking money damages for ASC's refusal to pay Cross Country for services rendered.

2.      Cross Country is a Massachusetts corporation with a principal place of business located in Medford, Massachusetts.

3.      On information and belief, ASC is a corporation organized and existing under the laws of the State of Arkansas with a principal place of business located in Mountain Home, Arkansas.

4.      On or about March 20, 2003, Cross Country and ASC entered into an Agreement (the "Agreement") in which, among other things, ASC desired to provide roadside assistance dispatch service to its extended automobile service contract customers and Cross Country agreed to provide such roadside assistance to those customers. A copy of this Agreement is attached hereto as **Exhibit 1**.

5.      Section 2(c) of the Agreement provides, among other things, that "ASC shall pay to Cross Country an administrative fee per Covered Vehicle." **Exhibit 1**, Section 2(c).

LITDOCS/583850.1

**EXHIBIT A**

Although Cross Country invoiced ASC for these administrative fees, ASC has failed to make its required payments in accordance with the Agreement.

6.       Section 2(d) of the Agreement provides, among other things, that ASC shall pay to Cross Country a service fee of $48.00 for each dispatching of a service provider that Cross Country provides for a covered vehicle. Exhibit 1, Section 2(d). Pursuant to Section 2(h) of the Agreement, this amount was increased to $48.95, effective March 24, 2004. Although Cross Country has submitted numerous invoices to ASC for supplying such emergency roadside assistance, ASC has failed to make its required payments in accordance with the Agreement.

7.       By letter dated June 16, 2004, Cross Country informed ASC that ASC had breached its obligations under the Agreement based on, among other things, its failure to pay Cross Country over $220,000 that had been invoiced to it pursuant to the Agreement.

8.       On or about June 29, 2004, the parties entered into a Settlement Agreement. Pursuant to the Settlement Agreement, ASC paid Cross Country $175,000 but otherwise breached the terms of the Settlement Agreement.

9.       ASC continues to breach its obligations under the Agreement and currently owes Cross Country in excess of $113,000 that has been invoiced to it pursuant to the Agreement.

## COUNT I
## BREACH OF CONTRACT
### Failure to Pay for Services Rendered

10.       Cross Country incorporates the allegations of Paragraphs 1-9 as if set fully herein.

11.       Pursuant to the Agreement, ASC agreed to pay Cross Country for services provided by Cross Country.

12.       ASC was required to pay Cross Country within twenty (20) days after its receipt of an invoice submitted by Cross Country.

13. Although Cross Country has invoiced ASC for services provided, ASC has failed to pay Cross Country for such services. By failing and refusing to pay Cross Country the balance due for services rendered, ASC is in breach of its contractual obligations to Cross Country.

## COUNT II
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

14. Cross Country incorporates the allegations of Paragraphs 1-13 as if set fully herein.

15. By failing to pay monies due to Cross Country in accordance with its contractual obligations to do so, ASC has breached the covenant of good faith and fair dealing implied in the parties' contractual dealings, causing Cross Country to suffer damages in an amount to be proven at trial.

16. ASC has also violated the covenant of good faith and fair dealing by harassing Cross Country and its top executives with telephone calls at their homes and at social events and by failing to abide by the terms of the Settlement Agreement.

## COUNT III
### VIOLATION OF M.G.L. c. 93A

17. Cross Country incorporates the allegations of Paragraphs 1-16 as if set fully herein.

18. As set forth above, ASC has wrongfully failed and refused to pay an existing known debt and harassed Cross Country in an effort to coerce Cross Country into accepting less.

19. ASC's actions constitute unfair and deceptive trade practices in violation of M.G.L. c. 93A that have caused Cross Country to be damaged in an amount to be proven at trial.

WHEREFORE, Cross Country respectfully requests that the Court:

(a)     enter judgment for Cross Country and against ASC on Counts I-III of the Complaint;

(b)    award Cross Country damages in an amount to be proven at trial, together with multiple damages under 93A;

(c)    award Cross Country interest, its costs and attorneys' fees; and

(d)    grant such other and further relief as this Court shall deem just and equitable.

CROSS COUNTRY DEMANDS A JURY TRIAL ON ALL MATTERS SO TRIABLE.


Respectfully submitted,

CROSS COUNTRY MOTOR CLUB, INC.

By its attorneys,

Victor H. Polk, Jr. (BBO # 546099)
William F. Benson (BBO # 646808)
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

Dated:  August 10, 2004

# EXHIBIT 1

# AGREEMENT

THIS AGREEMENT made this 20th day of March 2003, by and between CROSS COUNTRY MOTOR CLUB, INC., a corporation duly organized under the laws of the Commonwealth of Massachusetts ("Cross Country"), and AUTO SERVICES COMPANY, INC. a corporation duly organized and existing under the laws of the State of Arkansas (hereinafter referred to as "ASC");

WHEREAS, ASC desires to provide a roadside assistance dispatch service (hereinafter sometimes referred to as the "Service" or the "Plan") to certain persons or entities who during the term hereof are or become entitled to the benefits of an extended service contract program provided by ASC; and

WHEREAS, Cross Country desires to provide the Service for such persons;

NOW FOR GOOD AND VALUABLE CONSIDERATION, receipt and sufficiency whereof is hereby severally acknowledged, the parties hereto agree as follows:

1.    (a)    As used in this Agreement the expression "Customer" shall mean each person who during the term hereof is or becomes entitled to the benefits of an extended service contract program provided by ASC which provides coverage for an individually owned private passenger auto, van or pick-up truck with a carrying load not in excess of two tons each, a "Covered Vehicle"), and which program includes coverage for towing and labor and roadside assistance (the "ASC Program").

(b)    During the term hereof Cross Country agrees to provide roadside assistance services, as described in Exhibit A attached hereto, and as otherwise set forth herein. The services to be performed hereunder by Cross Country shall be performed in all of the fifty states of the United States (plus Washington, D.C.) and all of the provinces of Canada.

2.    (a)    ASC will need to transfer to Cross Country the existing "ASC program" national telephone assistance line (the "Number"), at ASC's sole cost and expense. Cross Country shall maintain the Number for use by Customers in connection with the services to be provided by Cross Country pursuant to this Agreement and bear all the costs thereof. The Number and all rights thereto shall be owned at all times by Cross Country, but shall be transferred by Cross Country to ASC for $1.00 upon the expiration or termination (other than for default by ASC) of this Agreement, at ASC's sole cost and expense. Calls to the Number shall be toll-free to the caller, and Cross Country shall not change the Number without the prior approval of ASC, unless required by law.

(b)    There will be an interim period following execution to permit Cross Country sufficient time to establish all necessary programming functionality. This period will take up to ninety (90) days. During this period, Cross Country will assist Customers in receiving Services and will invoice ASC accordingly, but will not be able to verify whether such Customers are entitled to Services.

03.03.06                                1

(c)    ASC shall pay to Cross Country an administrative fee per Covered Vehicle based upon contract length, as set forth below, which fee shall be invoiced to ASC by Cross Country bi-monthly for the full amount. ASC shall pay such fee for all new and renewing Covered Vehicles during the term hereof, but no such payment shall be made with respect to Covered Vehicles existing upon the execution of this Agreement.

| Contract Length | Price |
| --- | --- |
| Three months | $0.75 |
| Six months | $1.25 |
| One year | $2.00 |
| Two years | $2.50 |
| Three years or more | $2.75 |

(d)    When a Customer requests emergency roadside assistance for a Covered Vehicle, then Cross Country shall dispatch a provider of such services to the location of such vehicle. ASC shall pay to Cross Country a Service Fee of Forty-eight Dollars ($48.00) for each such service call to which it responds. Any tow provided in connection with such service shall be limited to the closest qualified facility, in Cross Country's judgment, and if any Customer requests a tow beyond such distance, such Customer shall pay the additional cost thereof to the service provider.

(e)    If a request for service under subdivision (d) above shall be canceled subsequent to a dispatch or in the event the vehicle for which the service was requested shall not be at the described site of disablement, ASC shall nevertheless pay to Cross Country the Service Fee for each such request.

(f)    (i)    Weekly, on a mutually agreed to day, with a monthly totaling and summarization at the end of each calendar month, ASC shall deliver to Cross Country a report setting forth (i) the name and address of each person and/or entity who became a Customer since the date of the last report (i.e., in virtually all instances, since the day before), (ii) the ASC Program number and duration thereof, (iii) the make, model, type and vehicle identification number of each Covered Vehicle, (iv) in each monthly report only, the name and address of each person and/or entity that ceased to be a Customer during the immediately preceding calendar month, (v) such other information as deemed reasonably necessary by the parties from time to time. Such files shall be submitted by ASC to Cross Country in electronic format compatible with Cross Country's computer system, and in general such reports shall at all times contain sufficient information as will enable Cross Country to determine whether any caller is a Customer (provided that in all instances Cross Country's good faith determination of a Customer's status as such shall be determinative). To the extent, however, that ASC shall not at any time so provide such database information to Cross Country, Cross Country shall be authorized to provide service to any caller claiming to be a Customer, without limitation, and be reimbursed therefor as herein elsewhere provided, and Cross Country having no responsibility to verify the nature of any such call.

03.03.96

2

(ii)    Cross Country acknowledges that in the course of performance of its obligations under this Agreement it may obtain access to an ASC customer database and other proprietary or confidential information from ASC. Cross Country agrees to maintain confidential such information and not disclose such information to any third party not requiring knowledge of such information for purposes of such third party's activities vis-à-vis Cross Country. Cross Country further agrees to return to ASC upon completion or termination of this Agreement any proprietary or confidential documents received from ASC.

(g)    The startup costs for the internal procedures and equipment in order for Cross Country to perform its obligations under this Agreement are included in the fees charged to ASC; however, if ASC requests any changes to the Service or to the program developed for this Agreement, then ASC shall compensate Cross Country for time spent by Cross Country personnel in implementing such changes, such reimbursement to be at the rate of One Hundred Fifty Dollars ($150.00) per hour for project management and Ninety-Five Dollars ($95.00) per hour for general development. Such amounts due to Cross Country shall be billed monthly, together with the other invoices to be given to ASC by Cross Country pursuant to this Agreement.

(h)    On each anniversary of the commencement date of the term hereof (each such anniversary being sometimes hereinafter referred to as an "Adjustment Date"), all amounts payable by ASC under this Article 2 (including, without limitation, all per Customer fees contained in Section (e) above, all per dispatch fees contained in section (d) above, and the hourly compensation charges contained in section (g) above, shall be increased to the respective amount that is determined by multiplying the initial amount of each such fee or other compensation by a fraction the numerator of which shall be the Consumer Price Index for All Urban Consumers, Seasonally Adjusted U.S. City Average, All Items (1982-84=100), as published by the Bureau of Labor Statistics of the United States Department of Labor (the "CPI"), for the month of January immediately preceding each Adjustment Date and the denominator of which shall be the CPI for January 2003 (the "Base CPI"). Each such set of adjusted amounts shall remain in effect and be payable by ASC during the entire year following such Adjustment Date, until the next Adjustment Date, when the provisions hereof shall again be applied.

3.    (a)    The term of this Agreement shall commence on MARCH 24 TH 2003, and shall expire at the close of business on the third anniversary of the commencement date, unless sooner terminated or extended as hereafter provided. The term hereof shall be automatically extended for successive periods of one (1) year each unless either party shall give written notice to the other at least ninety (90) days prior to the then expiration date of the term of this Agreement, as the same may have theretofore been extended, of such party's intent to terminate this Agreement as of such expiration date.

(b)    Cross Country shall be the sole provider of the Service to ASC for all of ASC's Customers during the entire term hereof, ASC hereby agreeing not to provide the Service, or any similar service, for any of its Customers, either through a third party vendor, through its own personnel or facilities or otherwise.

03.03.06

3

4.    (a)    Cross Country shall invoice ASC twice per month for any monies owed to it hereunder, and ASC shall pay the same to Cross Country within twenty (20) days thereafter.

(b)    ASC and Cross Country each agrees to maintain and preserve its books and records in accordance with generally accepted accounting principles and accounting procedures, such that each party will be able to verify the information provided to it by the other party pursuant hereto and confirm the appropriateness of any payments paid and/or payable by ASC, and each party shall have the right from time to time to inspect such books and records as may be necessary in order to verify the amounts paid and/or payable to Cross Country hereunder.

(d)    Any payments not paid by ASC to Cross Country when due shall bear interest from the due date at the rate of twelve percent (12%) per annum.

5.    (a)    Cross Country agrees, except as otherwise provided in this Agreement, to indemnify, defend and hold ASC harmless from and against all losses, claims, demands, damages, suits and liabilities, including reasonable attorneys' fees, arising from (i) its gross negligence or willful misconduct, or (ii) the failure of Cross Country to adhere to any law or regulation pertaining to the performance of its duties hereunder. Cross Country's liability hereunder shall, in all events be limited to the greater of the insurance coverage actually paid on behalf of Cross Country as a result of any liability of Cross Country hereunder or One Hundred Thousand Dollars ($100,000.00), including all liability, in the aggregate, for consequential, incidental, special, indirect or punitive damages and the like. In addition, it is understood and agreed that while Cross Country will arrange for the services called for in Section 2 above, the provider of the services will in each case be independent of and unaffiliated with Cross Country, and Cross Country shall not be responsible in any way for the acts or negligence of any provider of such services, ASC, and those afforded benefits under the coverage issued by ASC, agreeing to look solely to the providers of such services for any damages arising in connection therewith, and hereby releasing Cross Country therefrom.

(b)    ASC agrees to indemnify, defend and hold Cross Country harmless from any and all losses, claims, demands, damages, suits, liabilities, costs and expenses, including, without limitation, attorney's fees, arising from or in any way connected with (i) the sale and/or the furnishing of the Service by ASC, (ii) advertisements for the promotion and/or sale of the Service by ASC and/or its agents or dealers, or (iii) the failure of ASC to perform its duties pursuant to this Agreement and/or observe all of the terms, covenants and conditions contained herein on ASC's part to be performed or observed.

6.    (a)    In the event that:

(i)    either Cross Country or ASC shall neglect or fail to perform its duties or observe any of the conditions, provisions, terms and covenants contained in this Agreement, and such neglect or failure shall continue uncured for a period of thirty (30) days (ten (10) days in the case of the neglect or failure to pay money to the other)

after receipt of written notice from the other party of such neglect or failure; or

(ii)    any interest of either Cross Country or ASC under this Agreement shall be taken on execution or by other process of law; or

(iii)   either Cross Country or ASC shall commit an act of bankruptcy or become insolvent according to law; or

(iv)   either Cross Country or ASC makes any assignment for the benefit of creditors; or

(v)    a receiver, guardian, conservator, trustee or assignee or any similar officer or person is appointed for either Cross Country or ASC by any court and not discharged within thirty (30) days of such appointment; or

(vi)   any court shall enter an order with respect to either Cross Country or ASC providing for a general modification or alteration of the rights of its creditors,

then the other party may elect, then or at any time thereafter but prior to the curing of the event of default, to give written notice of its intention to terminate this Agreement immediately or on any subsequent date specified in such notice, and this Agreement shall thereafter be deemed terminated, without prejudice to any remedies at law or in equity for any damages or for any and all claims held by the terminating party against the other, which claims shall immediately become due and payable.

(b)    If either ASC or Cross Country shall breach or be in default under this Agreement, then whether or not this Agreement shall be terminated for any default as set forth in subdivisions (i) through (vi) above for any breach hereof, the party in default or breach shall pay to the other party all reasonable costs incurred by the other party in enforcing any of its rights hereunder, or in collecting any sums due and payable to it hereunder, including reasonable attorneys' fees.

7.   (a)    ASC understands and agrees that the name "Cross Country" and all names similar thereto, and the service marks, trademarks and tradenames, logos and the like pertaining thereto, belong to Cross Country, and ASC shall be deemed to have acquired no rights to use or otherwise take any advantage of any such names, marks or the like, in connection herewith or otherwise.

(b)    Cross Country agrees that it will not use ASC's name in any advertising or as a reference without the prior written consent of ASC, provided that such consent may not be unreasonably delayed or withheld and that such consent shall not be required for inclusion by Cross Country of ASC's name in any listing of Cross Country's clients.

03.03.06

5

(c)    ASC agrees that it will keep confidential any information that Cross Country may from time to time designate as confidential, and will make no use of any such information except as may be specifically permitted pursuant to the terms of this Agreement.

8.    (a)    It is agreed that if any provisions of this Agreement shall be determined to be void by any court of competent jurisdiction, then such determination shall not affect any other provisions of this Agreement, all of which other provisions shall remain in full force and effect unless such determination shall render either party's performance hereunder substantially more difficult or impossible to perform, in which case upon the giving of proper notice this Agreement may be terminated by the party whose performance has been so rendered substantially more difficult or impossible. It is the intention of the parties hereto that if any provision of this Agreement is capable of two constructions only one of which would render such provision valid, then the provision shall have the meaning which renders it valid. In the event it shall hereafter not be legal for Cross Country to provide the Service, or for ASC to offer or provide to its Customers the benefits of the Service, in any of the states of the United States or in any of the provinces of Canada, then this Agreement shall continue in full force and effect to the fullest extent permitted by law, except that neither Cross Country nor ASC shall be obligated to perform the prohibited acts in such places where the same remains unlawful.

(b)    This instrument contains the entire and only agreement between the parties, and no oral statements or representations or prior written matter not contained in this instrument shall have any force or effect. This Agreement shall not be modified in any way except by a writing subscribed by both parties by their duly authorized representatives.

(c)    All notices and other communications authorized or required hereunder shall be in writing and shall be given by mailing the same by certified or registered mail, return receipt requested, or by established overnight delivery service (e.g., Fedex, Purolator, etc.), postage and fees prepaid. If given to Cross Country, the same shall be mailed to Cross Country at 4040 Mystic Valley Parkway, Medford, Massachusetts 02155, Attention: President, or to such other person or at such other address as Cross Country may hereafter designate by notice to ASC; if given to ASC, the same shall be mailed to ASC at 971 Coley Drive, Mountain Home, AR 72653, Attention: Terry Small, Chief Operating Officer, or to such person or at such other address as ASC may hereafter designate by notice to Cross Country.

(d)    The relationship between Cross Country and ASC is not one of joint venture, partnership or employment, and nothing in this Agreement shall be construed to create any such relationship between the parties hereto.

(e)    The failure of either party to enforce at any time, or for any period, the provisions of this Agreement shall not be construed as a waiver of such provisions or of the right of such party thereafter to enforce each and every such provision. No claim or right arising out of the breach or default of this Agreement may be discharged in whole or in part by a waiver or renunciation of such claim or right unless such waiver or renunciation is in writing and signed by the aggrieved party.

(f)     If any action at law or in equity shall be necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, costs and necessary disbursements, in addition to any other relief to which such party may be entitled.

(g)     This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

(h)     In any case where either party hereto is required to do any act (other than make a payment of money to the other), the time for performance by such party shall be extended for delays caused by or resulting from Act of God, war, civil commotion, fire or other casualty, labor difficulties, general shortages of labor, materials or equipment, government regulations or other causes beyond such party's reasonable control.

9.     If any of the states shall be a state in which Cross Country Motor Club of California, Inc., rather than Cross Country Motor Club, Inc., shall be permitted to conduct business, then with respect of those states this Agreement shall be deemed an agreement between ASC and Cross Country Motor Club of California, Inc., and accordingly Cross Country Motor Club of California, Inc., joins in this Agreement for such purposes. Any reference to Cross Country shall where applicable mean and refer to Cross Country Motor Club of California, Inc. Until further notice, all sums shall be made payable to Cross Country Motor Club, Inc., and shall be delivered to it at the place above provided for the rendering of notices. Any notice given by or to Cross Country Motor Club, Inc., shall be deemed notice also given by or to Cross Country Motor Club of California, Inc.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, under seal, as of the date first written in this Agreement.

CROSS COUNTRY MOTOR CLUB, INC. and
CROSS COUNTRY MOTOR CLUB OF
CALIFORNIA, INC.

By:

Name: Scot Kubacs

Title: Vice President – Sales + Account Management

AUTO SERVICES COMPANY, INC.

By

Name: Brad Hasselwander

Title: CEO

## EXHIBIT A

## ROADSIDE ASSISTANCE PROGRAM

The following services are provided to all Covered Vehicles:

- **24-Hour, Toll-Free Roadside Assistance Line -** Using an exclusive 1-800 number, calls for this program would be received on a dedicated 800 line, answered, "Thank you for calling roadside assistance," or any other salutation deemed appropriate. These phone lines will be staffed by Cross Country's trained representatives who would be fully accustomed to the nuances of providing service to ASC Customers.

- **24-Hour Emergency Roadside Assistance -** In the event of a flat tire, out-of-gas, need for a battery jump, lockout, or if assistance is required with a minor mechanical disablement, ASC roadside assistance will dispatch a service provider to deliver fuel, change a tire, open the Covered Vehicle, or other services deemed practical and permissible to assist the motorist with quickly getting his or her Covered Vehicle back on the road.

- **24-Hour Emergency Towing Services -** In the event of a mechanical disablement which renders a Covered Vehicle inoperable anywhere in the United States or Canada, ASC Customers may call toll-free to arrange for a tow to the nearer of the closest qualified repair facility, in Cross Country's judgment, or the expenditure of a maximum of $50.00 for such tow.

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (hereinafter the "Settlement Agreement") is made as of this 29th day of June 2004, by and between Cross Country Motor Club, Inc. ("Cross Country") on the one side, and Auto Services Company, Inc. ("ASC") on the other, (all of the foregoing collectively referred to as the "Parties" or in the singular as a "Party").

WHEREAS, Cross Country and ASC are parties to an Agreement, dated March 20, 2003, in which, among other things, Cross Country provides roadside assistance to certain customers of ASC (the "Agreement").

WHEREAS, Cross Country claims that it has submitted numerous invoices to ASC for supplying such roadside assistance and ASC has failed to make its required payments, of which Cross Country alleges that in excess of $220,000 is overdue, in accordance with the Agreement.

WHEREAS, ASC claims that Cross Country has improperly billed ASC for services and has materially breached the Agreement.

WHEREAS, in a letter dated May 26, 2004, ASC sent Cross Country a notice terminating the Agreement and, on June 16, 2004, Cross Country sent a notice of termination to ASC (the "Termination Notices").

WHEREAS, on June 23, 2004, Cross Country initiated an action against ASC entitled *Cross Country Motor Club, Inc. v. Auto Services Company, Inc.*, which is pending in Superior Court in Middlesex County, Massachusetts, Civil Action No. 04-2534 (the "Action").

WHEREAS, Cross Country and ASC now desire to resolve the need to proceed with the Action.

NOW, THEREFORE, upon execution of this Settlement Agreement, and in consideration of the payment amount by ASC and the other consideration stated herein, it is hereby agreed as follows:

1.    **Payment Amount.**  Within one business day of the execution of this Settlement Agreement, ASC, or its designee, shall wire transfer to Cross Country One Hundred Seventy-Five Thousand Dollars ($175,000) (the "Payment Amount").  The wiring instructions are attached hereto as Exhibit A.  ASC's payment of the Payment Amount is not an acknowledgement that Cross Country is entitled to any or all of the amounts it seeks and is without prejudice to ASC's right to claim credits due on amounts invoiced by Cross Country or to claim that it has overpaid Cross Country or that ASC is entitled to a reduction or offset in the amounts sought by Cross Country due to Cross Country's alleged breaches of the Agreement.  Cross Country's receipt of the Payment Amount is without prejudice, and Cross Country has the right to claim additional amounts owed to it by ASC and to claim that it has been underpaid by ASC.

2.    **List of Credits.**  Within two weeks from the date of this Settlement Agreement, ASC shall provide Cross Country with a particularized list of all credits to which it asserts entitlement with regard to all of the invoices previously issued by Cross Country to ASC.  On this list, notwithstanding that ASC reserves its right to contend at a future date that Cross Country is barred from seeking any additional payments from ASC on the ground of accord and satisfaction (in that Cross Country accepted ASC's tender or partial payment on certain of its invoices), ASC shall provide an item-by-item, specific, detailed defense (other than accord and satisfaction) for each credit claimed on any invoice issued to it by Cross Country.  Within two weeks from the date that ASC provides its list of credits to Cross Country, Cross Country shall provide ASC with a particularized rebuttal to all of ASC's claimed credits.

3.    **No Admission or Waiver.**  The settlement of these claims is acknowledged to be a consensual resolution of the Action.  Nothing contained herein shall be considered as an admission of liability by any Party.

4.    **Dismissal of Action.**  Within five days of receiving the Payment Amount, Cross Country shall dismiss the Action, without prejudice.

5.    **Future Lawsuits.**  ASC shall not file any lawsuit against Cross Country, or any affiliate, subsidiary, director, employee, or agent of Cross Country, unless it notifies Cross Country in writing at least 10 days before filing any such action.  Cross Country shall not file any lawsuit against ASC, or any affiliate, subsidiary, director, employee, or agent of ASC, unless it notifies ASC in writing at least 10 days before filing any such action.  The parties agree that any future lawsuit arising out of the instant disputes between the parties as described herein shall only be brought in the state or federal courts in Massachusetts and specifically agree to the exclusive venue in such courts.  Any future disputes between the parties not arising out of the present dispute being settled herein may be brought in any state or federal court of competent jurisdiction.

6.    **Withdrawal of Termination Notices.**  ASC and Cross Country shall withdraw, simultaneously with the execution of this Settlement Agreement, the Termination Notices and Cross Country shall continue to perform its services under the Agreement.

7.    **Prior Alleged Breaches.**  ASC and Cross Country agree that any alleged failure by either Party to fulfill its obligations pursuant to the terms of the Agreement through the date of this Settlement Agreement shall not serve as a basis for terminating the Agreement.  Pre-settlement breaches may, however, be asserted as a defense to any action brought by the other party.  Failures after the date of this Settlement Agreement to fulfill obligations pursuant to the terms of the Agreement can be relied upon as a basis for terminating the Agreement in compliance with Section 6 thereof.  Nothing contained herein shall preclude ASC or Cross Country from asserting that any such alleged prior breaches of the Agreement should either offset or add to the amount that Cross Country claims is due from ASC or that ASC is entitled to damages from Cross Country resulting

from the alleged prior breaches of the Agreement by Cross Country. Nothing in this Settlement Agreement shall preclude Cross Country from terminating the Agreement pursuant to ¶6 of the Agreement for non-payment of any amounts due from ASC no matter when invoiced pursuant to a new notice of termination. Nothing in this Settlement Agreement shall preclude ASC from terminating the Agreement pursuant to ¶6 of the Agreement for any material breaches of the Agreement by Cross Country pursuant to a new notice of termination.

8.    **Operational Issues.** Within 10 days of the execution of this Settlement Agreement, each Party shall provide the other with a list of operational issues that it claims constitute a breach of the Agreement ("Operational List"). Within 10 days of receipt of the Operational List, each Party shall respond to the other by providing in writing its respective position to each alleged breach by providing in writing either the reason(s), if any, why it disagrees that a breach has occurred or is occurring, or the action(s), if any, it will take to resolve the alleged breach. The Operational List shall not be considered either a Notice of Default or Notice of Termination pursuant to Section 6 of the Agreement. Neither Party may issue such a Notice of Default or Notice of Termination, pursuant to Section 6 of the Agreement, prior to ten days after receipt by the other Party of the Operational List.

9.    **Full Force and Effect.** ASC and Cross Country agree that the Agreement is in full force and effect. Nothing contained herein shall be construed to modify the terms of the Agreement or any future applicability of the Agreement.

10.    **Attorneys' Fees and Costs.** Each Party shall bear its own attorneys' fees and costs in association with the Action and this Settlement Agreement.

11.    **Authority.** Each of the parties to this Settlement Agreement represents and warrants that it has the power and authority to execute, deliver and perform this Settlement Agreement, that this Settlement Agreement has been duly authorized, executed and delivered and that this Settlement Agreement is enforceable in accordance with its terms.

12.    **Representation By Counsel.** Each of the parties to this Settlement Agreement acknowledges that it has been represented by counsel in the negotiations resulting in this Settlement Agreement and that the execution of this Settlement Agreement is its free act and deed.

13.    **Entire Settlement Agreement.** This Settlement Agreement constitutes the entire Settlement Agreement between the parties and shall not be modified except by a writing signed by each of the parties hereto. In the event that any provision of this Settlement Agreement, in whole or in part, shall be determined to be invalid, unenforceable or void for any reason, such determination shall affect only the portion of such provision determined to be invalid, unenforceable, or void and shall not affect in any way the remainder of such provision or any other provision of this Settlement Agreement.

14.    **Governing Law.** This Settlement Agreement shall be governed by the

laws of the Commonwealth of Massachusetts and shall take effect as a sealed instrument under the laws of the Commonwealth of Massachusetts.

15. **Execution.** This Settlement Agreement may be simultaneously executed in multiple counterparts each of which shall be deemed to be an original but which together shall constitute but one original. It is the intent of the parties that the copy signed by any Party shall be fully enforceable against said Party.

**IN WITNESS WHEREOF** the parties, by duly authorized persons, have executed this Settlement Agreement as of the date first written above.

**CROSS COUNTRY MOTOR CLUB, INC.**

By: _____

Thomas P. Graham

Title: Vice President, Treasurer, Chief Financial
       Officer

**AUTO SERVICES COMPANY, INC.**

By: _____

Title: _____

LITDOCS /557885.3

# EXHIBIT A

### Wire Instructions

**Bank Name:**          **Fleet Bank**
                        **100 Federal Street**
                        **Boston, MA 02110-1802**

**ABA #:**              011000138

**Account #:**          0724-9857

**Account Name:**       **Cross Country Motor Club, Inc.**