UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CROSS COUNTRY MOTOR CLUB, INC., )<br>     Plaintiff,                  )<br>v.                                )      CIVIL ACTION<br>                                  )      NO.04-11992-NG<br>AUTO SERVICES COMPANY, INC,       )<br>     Defendant.                   )<br>                                  ) | |

## MOTION TO AMEND COMPLAINT

The plaintiff Cross Country Motor Club, Inc. ("Cross Country") hereby moves, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, to amend its complaint. In support of this motion, Cross Country states that, since it filed its complaint, the defendant Auto Services Company, Inc. ("ASC") wrongfully filed a retaliatory action in the Circuit Court of Baxter County, Arkansas Civil Division ("Arkansas Action") to undermine completely the relief sought herein and to usurp the primary asset which allows Cross Country to perform its exclusive right under a written Agreement it had with ASC. Those actions form the bases for the allegations in the Amended Complaint.

Cross Country further states as follows:

1.   Cross Country and ASC are parties to an Agreement dated March 20, 2003 ("Agreement"). Pursuant to the Agreement, Cross Country provides roadside assistance to customers of ASC when Cross Country answers a national telephone assistance line

("Phone Number") owned by Cross Country. See Exhibit 1, Agreement, ¶2(a). Without the Phone Number, it is impossible for Cross Country to perform its obligations under the Agreement.

2. The Agreement contains explicit terms as to what constitutes a breach and how it may be terminated.

3. On or before, June 23, 2004, each of the parties sent a written notice of termination to the other party pursuant to the Agreement. These termination notices have since been withdrawn by agreement of the parties. See Exhibit 1, Settlement Agreement, ¶6.

4. On June 23, 2004, Cross Country initiated an action against ASC entitled, *Cross Country Motor Club, Inc. v. Auto Services Company, Inc.*, in the Middlesex Superior Court of the Commonwealth of Massachusetts, Docket No. MICV2004-02534, alleging breach of the Agreement by ASC ("First Middlesex Action"). The focus of the dispute was how much ASC owed Cross Country for services provided by Cross Country pursuant to the Agreement.

5. On June 29, 2004, the parties executed a Settlement Agreement ("Settlement Agreement"), and the First Middlesex Action was dismissed without prejudice. A true and accurate copy of the Agreement and the Settlement Agreement are attached hereto as **Exhibit 1**.

6. Pursuant to the Settlement Agreement, the parties agreed, *inter alia*, as follows:

  a. ASC would pay $175,000 to Cross Country, Settlement Agreement ¶1;

  b. ASC would "provide an item-by-item, specific detailed defense" to the amounts claimed due by Cross Country, Settlement Agreement ¶2;

  c. "any future lawsuit arising out of the instant disputes between the parties . . .shall only be brought in the state or federal courts in Massachusetts," Settlement Agreement ¶5;

  d. the prior termination notices shall be withdrawn, Settlement Agreement ¶6;

  e. prior breaches "shall not serve as a basis for terminating the Agreement;" prior breaches may only "be asserted as a defense" (not an affirmative claim); and that the Agreement may not be terminated in the absence of a "new notice of termination," Settlement Agreement ¶7; and

  f. each party shall provide the other with a list of operational issues, Settlement Agreement ¶8.

7. On August 10, 2004, Cross Country initiated a second action against ASC entitled, *Cross Country Motor Club, Inc. v. Auto Services Company, Inc.*, in the Middlesex Superior Court of the Commonwealth of Massachusetts, Docket No. MICV2004-03147, alleging breach of the Settlement Agreement by ASC ("Second Middlesex Action"). ASC removed the Second Middlesex Action to this court, and it's pending as the instant lawsuit.

8. On or about September 20, 2004, ASC filed a counterclaim against Cross Country. In the counterclaim, ASC seeks a declaration that "Cross Country has breached the

3

Agreement, that the Agreement is terminated, and that ASC has no further continuing obligations to Cross Country." ASC also seeks damages for breach of contract, breach of the duty of good faith and fair dealing, fraud and violations of Massachusetts General Laws chapter 93A. ASC does not allege that it sent a new notice of termination or that Cross Country breached the Settlement Agreement. Instead, all of the claims appear to be based on prior breaches and without a proper termination notice, all in direct violation of the Settlement Agreement.

9. Thereafter, in this Court, the parties attended a Rule 16 conference; served their initial disclosures; participated in a mediation; and exchanged paper discovery. A further court conference is scheduled on April 26, 2005.

10. On December 15, 2004, ASC sent a new notice of its "intention to terminate the relationship between the parties effective January 17, 2005." The letter itself was conditional. Indeed, Cross Country responded by letter dated January 13, 2005, and Cross Country provided services under the Agreement after January 17, 2005. In the January 13, 2005 response, Cross Country expressly informed ASC that its notice could not terminate the Agreement and that any such action by ASC "shall constitute further grounds for damages as part of the ongoing litigation between the parties." ASC continued to provide periodic data loads to Cross Country up through March 23, 2005.

4

ASC clearly recognized by its continued performance that there was no termination based on the December 15, 2004 letter. ASC has never followed up with another notice of termination.

    11. On March 8, 2005, ASC, without notice to Cross Country, initiated the Arkansas Action and, on March 29, 2005, filed an Amended Complaint and Petition for Ex Parte Restraining Order in the Arkansas Action. A true and accurate copy of the Complaint and other pleadings in the Arkansas Action are attached hereto as <u>Exhibit 2</u>. The only defendant in the Arkansas Action is Sprint International Communications Corporation ("Sprint"), Cross Country's carrier for the Phone Number it owns pursuant to the Agreement. <u>See</u> <u>Exhibit 1</u>, Agreement, ¶2(a). The plain purpose of the action was to usurp the Phone Number without notice to either Sprint or Cross Country and, as a result, to retaliate against Cross Country for its claims here and to prevent Cross Country from being able to continue its obligations under the Agreement, without ASC ever properly terminating the Agreement or acknowledging its obligations. The Arkansas Action has since been removed by Sprint to the United States District Court for the Western District of Arkansas, Harrison Division.

    12. None of the pleadings filed by ASC in the Arkansas Action refer to this litigation; refer to the Agreement or Settlement Agreement; refer to the plaintiff Cross Country; or

5

refer to the damages to Cross Country caused by the loss of its Phone Number. Instead, ASC alleges the following untrue and/or misleading statements as the core basis for an ex parte restraining order to take back the Phone Number: (1) ASC has been the owner of the Phone Number for over ten years (Exhibit 2, Complaint, ¶4); and Sprint appropriated the number without justification and transferred it to a third party (unidentified in the pleadings by ASC) without ASC's consent or permission (Exhibit 2, Complaint, ¶5). The allegations are supported by an Affidavit of the president of ASC, Brad Hasselwander, the same individual who signed the Agreement and the Settlement Agreement on behalf of ASC. Compare Exhibit 1 and Exhibit 2. Both allegations are directly contrary to the Agreement.

13. Based on the misstated, one-sided allegations in the Arkansas Action, the Arkansas Court issued an Ex Parte Restraining Order restraining and enjoining Sprint from transferring what the Court believed to be ASC's toll free number to a third party without ASC's consent or permission, without any knowledge of Cross Country, Cross Country's ownership of the Phone Number, or the Agreement. The Court also did not require ASC to post a bond, again because the Arkansas Court had no knowledge of the damages Cross Country would incur by the loss of its Phone Number if Sprint were affirmatively enjoined to transfer the Phone Number to ASC.

6

14. As a result of the restraining order, Cross Country no longer has access to the Phone Number and ASC has made it impossible for Cross Country to perform under the Agreement.

15. These facts give rise to new claims against ASC for breach of the Agreement; breach of the Settlement Agreement; wrongful termination of the Agreement; unfair and deceptive acts or practices under Massachusetts General Laws chapter 93A; and the damages to Cross Country which flow from such unlawful behavior.

16. As ASC's recent conduct is the cause of these new allegations, it cannot allege prejudice. These allegations were also unknown at the time the Complaint was filed and, therefore, could not have originally been included. Moreover, where ASC seeks a declaration in this Court, as it does in its counterclaim, that the Agreement has been terminated and that it has no further obligations to Cross Country, these new allegations are particularly relevant. They also arise pursuant to the same Agreement and relationship which is the subject of the Complaint originally filed by Cross Country.

WHEREFORE, Cross Country respectfully requests that the Court allow Cross Country Motor Club, Inc. to file the attached Amended Complaint and that it simultaneously accept the attached and signed Amended Complaint for filing.

### LOCAL RULE 7.1 CERTIFICATION

The undersigned counsel hereby certifies that on Thursday, April 21, 2005, he called local counsel, Neal Bingham, and lead counsel, Jason Advocate, for the defendant Auto Services Company, Inc. in a good faith attempt to resolve or narrow the issue before filing this motion.

CROSS COUNTRY MOTOR CLUB, INC.,

By its Attorneys,

Looney, Cohen, Reagan & Aisenberg LLP
David C. Aisenberg, BBO # 545895
109 State Street
Boston, MA  02109
(617) 371-1050