UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CROSS COUNTRY MOTOR CLUB, INC., )<br>    Plaintiff, )<br>v. )<br>     )<br>AUTO SERVICES COMPANY, INC, )<br>    Defendant. )<br>_____) | CIVIL ACTION<br>NO.04-11992-NG |

## AMENDED COMPLAINT

1.  The plaintiff, Cross Country Motor Club, Inc. ("Cross Country"), brings this action against the defendant, Auto Services Company, Inc. ("ASC"), seeking money damages for ASC's wrongful termination and breach of contract and ASC's refusal to pay Cross Country for services rendered.

2.  Cross Country is a Massachusetts corporation with a principal place of business located in Medford, Massachusetts.

3.  On information and belief, ASC is a corporation organized and existing under the laws of the State of Arkansas with a principal place of business located in Mountain Home, Arkansas.

4.  Cross Country and ASC are parties to an Agreement dated March 20, 2003 ("Agreement"). A copy of the Agreement is attached hereto as part of Exhibit 1. Pursuant to the Agreement, Cross Country provides roadside assistance to customers of ASC when Cross Country answers a national telephone assistance line ("Number") owned by Cross Country. See Exhibit

LITDOCS/563850.1

1, Agreement, Section 2(a). Without the Number, it is impossible for Cross Country to perform its obligations under the Agreement.

5. Section 2(a) of the Agreement specifically provides, among other things, that there is a Number to be used by Cross Country to handle calls from customers; that "Cross Country shall maintain the Number for use by Customers in connection with the services to be provided by Cross Country pursuant to this Agreement and bear all costs thereof;" the "Number and all rights thereto shall be owned at all times by Cross Country;" and that ASC may buy back the Number "upon the expiration or termination (other than the default by ASC) of this Agreement." Exhibit 1, Agreement, Section 2(a).

6. Section 2(c) of the Agreement provides, among other things, that "ASC shall pay to Cross Country an administrative fee per Covered Vehicle." Exhibit 1, Agreement, Section 2(c). Although Cross Country invoiced ASC for these administrative fees, ASC has failed to make its required payments in accordance with the Agreement.

7. Section 2(d) of the Agreement provides, among other things, that ASC shall pay to Cross Country a service fee of $48.00 for each dispatching of a service provider that Cross Country provides for a covered vehicle. Exhibit 1, Section 2(d). Pursuant to Section 2(h) of the Agreement, this amount

was increased to $48.95, effective March 24, 2004, and a further increase was to be effective March 24, 2005. Although Cross Country has submitted numerous invoices to ASC for supplying such emergency roadside assistance, ASC has failed to make its required payments in accordance with the Agreement.

8. The Agreement contains explicit terms as to what constitutes a breach and how it may be terminated. See Exhibit 1, Agreement, Section 6.

9. On or before, June 23, 2004, each of the parties sent a written notice of termination to the other party pursuant to the Agreement. These termination notices have since been withdrawn by agreement of the parties. See Exhibit 1, Settlement Agreement, Section 6.

10. On June 23, 2004, Cross Country initiated an action against ASC entitled, *Cross Country Motor Club, Inc. v. Auto Services Company, Inc.*, in the Middlesex Superior Court of the Commonwealth of Massachusetts, Docket No. MICV2004-02534, alleging breach of the Agreement by ASC ("First Middlesex Action"). The focus of the First Middlesex Action was how much ASC owed Cross Country for services provided by Cross Country pursuant to the Agreement.

11. On June 29, 2004, the parties executed a Settlement Agreement ("Settlement Agreement"), and the First Middlesex

Action was dismissed without prejudice. A copy of the Settlement Agreement is attached hereto as part of **Exhibit 1**.

12. Pursuant to the Settlement Agreement, the parties agreed, *inter alia*, as follows:

    **a.** ASC would pay $175,000 to Cross Country, Exhibit 1, Settlement Agreement, Section 1;

    **b.** ASC would "provide an item-by-item, specific detailed defense" to the amounts claimed due by Cross Country, Exhibit 1, Settlement Agreement, Section 2;

    **c.** "any future lawsuit arising out of the instant disputes between the parties . . .shall only be brought in the state or federal courts in Massachusetts," Exhibit 1, Settlement Agreement, Section 5;

    **d.** the prior termination notices shall be withdrawn, Exhibit 1, Settlement Agreement, Section 6;

    **e.** prior breaches "shall not serve as a basis for terminating the Agreement;" prior breaches may only "be asserted as a defense" (not an affirmative claim); and that the Agreement may not be terminated in the absence of a "new notice of termination," Exhibit 1, Settlement Agreement, Section 7; and

    **f.** each party shall provide the other with a list of operational issues, Exhibit 1, Settlement Agreement, Section 8.

13. On August 10, 2004, Cross Country initiated a second action against ASC entitled, *Cross Country Motor Club, Inc. v. Auto Services Company, Inc.*, in the Middlesex Superior Court of the Commonwealth of Massachusetts, Docket No. MICV2004-03147, alleging breach of the Settlement Agreement by ASC ("Second Middlesex Action"). ASC removed the Second Middlesex Action to this court, and it's pending as the instant lawsuit.

LITDOCS/563850.1

14. On or about September 20, 2004, ASC filed a counterclaim against Cross Country. In the counterclaim, ASC seeks a declaration that "Cross Country has breached the Agreement, that the Agreement is terminated, and that ASC has no further continuing obligations to Cross Country." ASC also seeks damages for breach of contract, breach of the duty of good faith and fair dealing, fraud and violations of Massachusetts General Laws chapter 93A. ASC does not allege that it sent a new notice of termination or that Cross Country breached the Settlement Agreement. Instead, all of the claims appear to be based on prior breaches and without a proper termination notice, all in direct violation of the Settlement Agreement.

15. Prior to its recent transfer of business and misappropriation of the toll-free Number, ASC had not terminated the Agreement after the execution of the Settlement Agreement. While ASC sent a letter dated December 15, 2004, notifying Cross Country of an intent to terminate effective January 15, 2005, the letter was conditional, failed to comply with the requirements of the Agreement, and ASC continued to evidence that the Agreement remained in effect by its provision of database information to Cross Country up through March 23, 2005. Therefore, the December 15, 2004 letter did not properly terminate the Agreement.

L:TDOCS/563850.1

16. Section 3(a) of the Agreement provides, among other things, that the term of the Agreement is for three years beginning March 24, 2003, unless sooner terminated. <u>Exhibit 1</u>, Section 3(a). The Agreement has never been terminated by ASC in accordance with its terms, yet ASC has made it impossible for Cross Country to perform for the balance of the term.

17. ASC has defaulted on its obligations under the Agreement and the Settlement Agreement. ASC does not own the Number.

18. On March 8, 2005, ASC, without notice to Cross Country, initiated an action in the Circuit Court of Baxter County, Arkansas Civil Division ("Arkansas Action") and, on March 29, 2005, filed an Amended Complaint and Petition for Ex Parte Restraining Order in the Arkansas Action. A copy of the Complaint and other pleadings in the Arkansas Action are attached hereto as <u>Exhibit 2</u>. The only defendant in the Arkansas Action is Sprint International Communications Corporation ("Sprint"), Cross Country's carrier for the Number that Cross Country owns pursuant to the Agreement. See <u>Exhibit 1</u>, Agreement, Section 2(a). The plain purpose of the Arkansas Action was to usurp the Number without notice to either Sprint or Cross Country and, as a result, to retaliate against Cross Country for its claims here and to prevent Cross Country from being able to continue its obligations under the Agreement,

-6-

without ASC ever properly terminating the Agreement or acknowledging its obligations.

19. None of the pleadings filed by ASC in the Arkansas Action refer to this litigation; refer to the Agreement or Settlement Agreement; refer to the plaintiff Cross Country; or refer to the damages to Cross Country caused by the loss of its Number. Instead, ASC alleges the following untrue and/or misleading statements as the core basis for an ex parte restraining order to take back the Phone Number: (1) ASC has been the owner of the Number for over ten years (Exhibit 2, Complaint, ¶4); and Sprint appropriated the Number without justification and transferred it to a third party (unidentified in the pleadings by ASC) without ASC's consent or permission (Exhibit 2, Complaint, ¶5). The allegations are supported by an Affidavit of the president of ASC, Brad Hasselwander, the same individual who signed the Agreement and the Settlement Agreement on behalf of ASC. Compare Exhibit 1 and Exhibit 2. Both allegations are directly contrary to the Agreement.

20. Based on the misstated, one-sided allegations in the Arkansas Action, the Arkansas Court, without any knowledge of Cross Country, Cross Country's ownership of the Number, or the Agreement, issued an Ex Parte Restraining Order restraining and enjoining Sprint from transferring what the Court believed to be ASC's toll free number to a third party without ASC's consent or

permission. The Court also did not require ASC to post a bond, again because the Arkansas Court had no knowledge of the damages Cross Country would incur by the loss of its Number if Sprint were affirmatively enjoined to transfer the Number to ASC.

21. As a result of the restraining order, Cross Country no longer has access to the Number and ASC has made it impossible for Cross Country to perform under the Agreement. Such action is a material default under the Agreement and constitutes a termination of the Agreement by ASC. As a result, Cross Country has sent a proper new notice to acknowledge the termination and to reserve its right to damages as a result.

22. The claims in the Arkansas Action arise pursuant to the same Agreement and relationship which is the subject of the Complaint originally filed by Cross Country.

23. Section 3(b) of the Agreement provides, among other things, that "Cross Country shall be the sole provider of the Service to ASC for all of ASC's Customers during the entire term hereof, ASC hereby agreeing not to provide the Service, or any similar service, for any of its Customers, either through a third party vendor, through its own personnel or facilities or otherwise. Exhibit 1, Agreement, Section 3(b). ASC has violated this provision because it is now using a provider for its Services other than Cross Country.

## COUNT I
## BREACH OF CONTRACT

24. Cross Country incorporates the allegations of Paragraphs 1-23 as if set forth fully herein.

25. Pursuant to the Agreement, ASC agreed to pay Cross Country for services provided by Cross Country.

26. ASC was required to pay Cross Country within twenty (20) days after its receipt of an invoice submitted by Cross Country.

27. Although Cross Country has invoiced ASC for services provided, ASC has failed to pay Cross Country for such services. By failing and refusing to pay Cross Country the balance due for services rendered, ASC is in breach of its contractual obligations to Cross Country.

28. By letter dated June 16, 2004, Cross Country informed ASC that ASC had breached its obligations under the Agreement based on, among other things, its failure to pay Cross Country over $220,000 that had been invoiced to it pursuant to the Agreement.

29. On or about June 29, 2004, the parties entered into a Settlement Agreement. Pursuant to the Settlement Agreement, ASC paid Cross Country $175,000 but otherwise breached the terms of the Settlement Agreement.

30. ASC also breached the terms of the Agreement in other ways, in part, as set forth above, including, but not limited to misappropriation of the Number and wrongful termination of the Agreement.

## COUNT II
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

31. Cross Country incorporates the allegations of Paragraphs 1-30 as if set forth fully herein.

32. By failing to pay monies due to Cross Country in accordance with its contractual obligations to do so, ASC has breached the covenant of good faith and fair dealing implied in the parties' contractual dealings, causing Cross Country to suffer damages in an amount to be proven at trial.

33. ASC has also violated the covenant of good faith and fair dealing by harassing Cross Country and its top executives with telephone calls at their homes and at social events and by failing to abide by the terms of the Settlement Agreement.

34. ASC has also violated the covenant of good faith and fair dealing by, among other things, ignoring its obligations under the Settlement Agreement, ignoring its obligations under the Agreement, filing the Arkansas Action, de facto terminating the Agreement without justification, wrongfully making it impossible for Cross Country to perform under the Agreement before sending any proper notice of termination and taking the telephone number owned by Cross Country.

## COUNT III
### VIOLATION OF M.G.L. c. 93A

35. Cross Country incorporates the allegations of Paragraphs 1-34 as if set forth fully herein.

36. As set forth above, ASC has wrongfully failed and refused to pay an existing known debt and harassed Cross Country in an effort to coerce Cross Country into accepting less; ASC

entered into a Settlement Agreement with no intent to complete its obligations thereunder; ASC filed an action in another jurisdiction to interfere with Cross Country's rights under the Agreement and in direct violation of the Agreement; and ASC wrongfully terminated the Agreement and prevented Cross Country from performing its obligations thereunder.

37. ASC's actions constitute unfair and deceptive trade practices in violation of M.G.L. c. 93A that have caused Cross Country to be damaged in an amount to be proven at trial.

WHEREFORE, Cross Country respectfully requests that the Court:

(a) enter judgment for Cross Country and against ASC on Counts I-III of the Complaint;

(b) award Cross Country damages in an amount to be proven at trial, together with multiple damages under 93A;

(c) award Cross Country interest, its costs and attorney's fees; and

(d) grant such other and further relief as this Court shall deem just and equitable.

CROSS COUNTRY DEMANDS A JURY TRIAL ON ALL MATTERS SO TRIABLE.

>   CROSS COUNTRY MOTOR CLUB, INC.,
>
>   By its Attorneys,
>
>   /s/ David C. Aisenberg
>   Looney, Cohen, Reagan & Aisenberg LLP
>   David C. Aisenberg, BBO # 545895
>   109 State Street
>   Boston, MA  02109
>   (617) 371-1050

-12-